# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARJORIE MAUPIN, | Case No. 1:16-cv-00722-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | **(Doc. 1)** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

On May 23, 2016, Plaintiff Marjorie Maupin ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability benefits and supplemental security income. (Doc. 1.) Plaintiff filed her opening brief ("Plaintiff's Motion") on May 22, 2017, (Doc. 20), and Defendant filed their Cross-Motion for Summary Judgment ("Defendant's Motion") on July 20, 2017, (Doc. 24). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

For the reasons provided herein, the Court DENIES Plaintiff's Motion, (Doc. 20), GRANTS Defendant's Motion, (Doc. 24), and AFFIRMS the final decision of the Commissioner.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8 & 9.)

# I. BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on March 1, 1974, and is currently 43 years old. (Administrative Record ("AR") 269.)

On January 30, 2013, Plaintiff filed claims for disability insurance benefits and supplemental security income. (*See* AR 267–74.) In her claims, Plaintiff alleged that she became disabled on November 15, 2007. (AR 269.) Plaintiff stated that the following conditions limit her ability to work: (1) chronic pain in legs, (2) anxiety, (3) depression, (4) migraines, (5) hypertension, and (6) mood swings. (AR 135.)

A state agency physician, Dr. W. Jackson, reviewed Plaintiff's medical record. (*See* AR 143–45.) In an opinion dated June 20, 2013, Dr. Jackson opined, in relevant part, that "[t]he evidence supports a [l]ight" residual functional capacity ("RFC") "with . . . [h]azard precautions . . . , but also with the addition of some postural limitations due to . . . chronic back pain." (AR 145.) In an opinion dated October 16, 2013, another state agency physician, Dr. E. Wong, concurred with Dr. Jackson's assessment regarding Plaintiff's limitations. (*See* AR 178–80.) Following these opinions, Plaintiff received medical care at Ceres Medical Office in Ceres, CA during portions of 2013 and 2014. (*See* AR 626–80.)

A state agency psychiatrist, Dr. D. Funkenstein, also reviewed Plaintiff's medical record. (*See* AR 145–47.) In an opinion dated June 17, 2013, Dr. Funkenstein opined, in relevant part, that Plaintiff's mental limitations were either moderately limited or not significantly limited. (*See* AR 146–47.) Dr. Funkenstein also opined that Plaintiff's "attention [and] concentration [is] intact for unskilled work." (AR 146.) In an opinion dated October 16, 2013, another state agency psychiatrist, Dr. A. Garcia, concurred with Dr. Funkenstein's assessment regarding Plaintiff's limitations. (*See* AR 194–95.)

A clinical psychologist, Dr. Robert Morgan, examined Plaintiff in 2014. (*See* AR 682.) Dr. Morgan performed a series of psychological tests on Plaintiff during this examination. (*See* AR 686–87.) In a Comprehensive Psychological Evaluation dated July 21, 2014, Dr. Morgan diagnosed Plaintiff with major depressive disorder and a cognitive disorder. (AR 687.)

Throughout his report—including in the sections regarding the "results of psychological assessment" and the "diagnostic impression"—Dr. Morgan included statements regarding Plaintiff's subjective "reports." (*See* AR 682–89.) Dr. Morgan ultimately provided the following relevant opinion:

> [Plaintiff] . . . present[ed] with a marked impairment in her ability to maintain her activities of daily living.
>
> . . .
>
> In like manner [Plaintiff] . . . present[ed] with a marked impairment in her ability to maintain her social functioning.
>
> . . .
>
> [Plaintiff] . . . present[ed] with a marked impairment in her concentration, persistence and pace as noted on the mental status examination, psychological testing and reported in history.
>
> [Plaintiff's] ability to perform activities within a clear schedule, maintain regular attendance and be punctual within customary tolerances is markedly impaired.
>
> [Plaintiff's] ability to complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace is markedly impaired.
>
> [Plaintiff's] ability to interact with coworkers and the public and to withstand the stress of a routine work day and deal with various changes in the work setting is markedly impaired.
>
> The likelihood is high of [Plaintiff's] emotional deterioration in a work like environment.
>
> [Plaintiff] is thought to have been disabled since the point in time that she initially applied for disability.

(AR 688–89.) Dr. Morgan then stated in his report that he "affirm[ed] . . . that [his] findings [were] based upon [his] objective assessment and not solely on [Plaintiff's] subjective report." (AR 689.)

The Social Security Administration denied Plaintiff's claims initially on June 25, 2013, (AR 201–10), and again on reconsideration on October 17, 2013, (AR 214–24). Plaintiff then requested a hearing before an ALJ on December 12, 2013. (AR 225–26.)

On August 28, 2014, the ALJ held a hearing regarding Plaintiff's claims (the "Hearing"). (*See* AR 75–111.) Plaintiff was represented by counsel at this Hearing. (*See* AR 75.)

In a decision dated December 3, 2014, the ALJ found that Plaintiff is not disabled. (AR 20–43.) In the decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*See* AR 13–23.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since November 15, 2007, the alleged onset date." (AR 26.) At step two, the ALJ found that Plaintiff "has the following severe impairments: disorder of the back, peripheral neuropathy, osteoarthritis, anxiety disorders and affective disorders." (AR 26.) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 28.)

The ALJ next found that Plaintiff has the RFC "to perform light work," with certain limitations. (AR 30.) During the course of the RFC analysis, the ALJ accorded "significant weight to the opinions of Dr. Jackson and Dr. Wong because their opinions were based on a thorough review of [Plaintiff's] records and are consistent with the evidence as a whole." (AR 33.) However, "[g]iven the unremarkable objective medical findings," the ALJ gave "lesser weight" to the "postural limitations" opined by Dr. Jackson and Dr. Wong "because they give too [sic] credit to [Plaintiff's] subjective allegations." (AR 33.)

The ALJ further noted during the RFC analysis that Plaintiff "has a history of anxiety and affective disorders," but responded positively to medications in 2012. (AR 32.) The ALJ then provided the following pertinent discussion regarding Dr. Morgan's opinion:

> The [ALJ] assigns little weight to Dr. Morgan's opinion for various reasons. First, Dr. Morgan only examined [Plaintiff] once and his opinion was not based on a long treatment history. Second, Dr. Morgan overly relied on [Plaintiff's] subjective complaints and historical accounts. For example, [Plaintiff] informed Dr. Morgan that she was "home all day," however [Plaintiff] admitted at the [H]earing that she did go shopping in stores for groceries . . . . Further, [Plaintiff] informed Dr.

> Morgan that she had no history of arrests or incarcerations as a juvenile or adult, which is inconsistent the statement [sic] made in her [a]pplication for [s]upplemental [s]ecurity [i]ncome [b]enefits that indicate that [Plaintiff] has been accused/convicted of a felony or an attempt to commit a felony . . . . Third, Dr. Morgan's overly restrictive limitations are inconsistent with the objective medical evidence, which shows that [Plaintiff] has responded well to medications and no doctor has ordered IQ tests, computed tomography scans or magnetic resonance imaging studies to investigate [Plaintiff's] allegations of memory loss and loss of an ability to read . . . . Fourth, Dr. Morgan's opinion that [Plaintiff] was disabled since her alleged onset date touches upon subject matter reserved for the Commissioner . . . . This statement also suggests speculation and possible extrapolation from Dr. Morgan since there is no evidence that he was providing treatment of [Plaintiff] in or around her alleged onset date. Fifth, the evidence suggests that [Plaintiff] underwent an examination by Dr. Morgan not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be ignored.

(AR 35–36.)

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." (AR 37.) Finally, at step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 38.) Ultimately, the ALJ found that Plaintiff "is not disabled under section 1614(a)(3)(A) of the Social Security Act." (AR 39.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 18–19.) On March 18, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–6.)

Plaintiff then filed the Complaint in this Court on May 23, 2016. (Doc. 1.) Plaintiff filed Plaintiff's Motion on May 22, 2017, (Doc. 20), and Defendant filed Defendant's Motion on July 20, 2017, (Doc. 24). To date, Plaintiff has not filed a reply in support of Plaintiff's Motion. As such, the briefing in this case is complete and this matter is ready for disposition.

## II. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a

claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## III. DISCUSSION

Plaintiff argues that the ALJ erred (1) by failing to develop the record, and (2) during the RFC analysis by rejecting a portion of the opinion of an examining physician―Dr. Robert Morgan.[2] (*See* Doc. 20 at 13–19.) For the reasons that follow, the Court disagrees with Plaintiff's positions.

### A. Duty to Develop

Plaintiff first argues that the ALJ erred by not fully developing the record. (*See* Doc. 20 at 11–13.) The Court disagrees.

"[T]he ALJ is not a mere umpire at" a social security proceeding and "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (alteration in original) (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). Indeed, "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). "This duty extends to the represented as well as to the unrepresented claimant." *Id.* (citing *Smolen*, 80 F.3d at 1288).

---

[2] Plaintiff also appears to argue in her briefing that the ALJ's RFC determination was deficient insofar as the ALJ relied on the opinions of non-examining physicians―namely, Dr. Jackson, Dr. Wong, Dr. Funkenstein, and Dr. Garcia―and, according to Plaintiff, opinions from such physicians cannot constitute substantial evidence. (*See* Doc. 20 at 7–11.) The Court disagrees with this argument. As noted by the Ninth Circuit, "[t]he opinions of . . . non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted). Here, the ALJ explicitly stated in its decision that the ALJ accorded great weight to the opinions of the non-examining physicians because they were "consistent with the record as a whole." (AR 33–34.) Plaintiff does not contest this finding. (*See* Doc. 20 at 8–11.) Consequently, her argument fails. *See Thomas*, 278 F.3d at 957.

8

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288); *see, e.g.*, *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (citation omitted)); *see also Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) ("Some kinds of cases . . . do normally require a consultative examination, including those in which additional evidence needed is not contained in the records of the claimant's medical sources, and those involving an ambiguity or insufficiency in the evidence that must be resolved." (alterations omitted) (citations omitted)). "A specific finding of ambiguity or inadequacy is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) and *Smolen*, 80 F.3d at 1288).

Plaintiff does not argue that the ALJ's duty to develop the record was triggered by ambiguous evidence in the record. (*See* Doc. 20 at 11–13.) Instead, Plaintiff appears to argue that the record was inadequate because the opinions provided by Dr. Jackson and Dr. Wong "were over a year old" and did not take into account the subsequent medical records from the Ceres Medical Office,[3] (*id.* at 12), and specifically as these records pertained to "Plaintiff's back impairment," (*id.* at 19). As such, according to Plaintiff, the ALJ should have sought additional "clarification from a medical source regarding Plaintiff's . . . limitations." (*Id.*)

---

[3] Plaintiff also argues that the ALJ erred by relying on the opinions of Dr. Funkenstein and Dr. Garcia, as these psychiatrists provided their opinions prior to Dr. Morgan releasing his report. (*See* Doc. 20 at 9–11.) As Plaintiff argues that an updated opinion that incorporated Dr. Morgan's test results would have yielded a different opinion, (*see id.*), the Court construes this argument as asserting that the ALJ erred in according more weight to the opinions of Dr. Funkenstein and Dr. Garcia—which omitted Dr. Morgan's test results—than the opinion of Dr. Morgan—which included these test results. The Court extensively analyzes this issue below.

1       The Court is not persuaded by Plaintiff's position. Plaintiff does not argue that the results from the Ceres Medical Office demonstrated any change to the status of Plaintiff's physical limitations. (*See* Doc. 20 at 8.) To the contrary, as discussed by the ALJ in its decision, these results were consistent with the prior "objective medical findings" in being "unremarkable." (AR 33; *see also* AR 626–80 (constituting the results from the Ceres Medical Office).) Simply put, an additional opinion regarding the Ceres Medical Office results would have no additional probative value, as these results did not materially conflict with the prior medical evidence regarding Plaintiff's physical limitations. It is thus not surprising that Plaintiff, herself, stated at the Hearing that the "record [was] complete" with the inclusion of the results from the Ceres Medical Office. (*See* AR 78.)

      For these reasons, the Court finds that the record was not inadequate due to the omission of a more recent medical opinion that addressed the results from the Ceres Medical Office. Absent an inadequate record, the Court finds that the ALJ did not err by failing to develop the record. *See, e.g.*, *McLeod*, 640 F.3d at 885 (noting that the ALJ's "duty to inquire" is "trigger[ed]" where "the record establishes ambiguity or inadequacy").

## B.    Weight Accorded to an Examining Physician

      Plaintiff next argues that the ALJ erred by rejecting a portion of the opinion of an examining physician—Dr. Morgan. (*See* Doc. 20 at 13–19.) The Court again disagrees.

### 1.    Overview of Analysis

      "The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis." *Colston v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-01750-SKO, 2017 WL 784870, at *5 (E.D. Cal. Feb. 28, 2017) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)). A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what

10

evidence as long as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick*, 157 F.3d at 725. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

Here, it is uncontested that Dr. Morgan was Plaintiff's examining physician. (*See, e.g.*, AR 34.) "As in the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citation omitted). Nonetheless, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

2. The ALJ Did Not Err in Weighing the Opinion of Dr. Morgan

In this case, Dr. Morgan opined that Plaintiff suffered from numerous mental impairments and diagnosed Plaintiff with major depressive disorder and a cognitive disorder. (*See* AR 687–88.) Dr. Morgan also opined that Plaintiff had "marked" impairments in her (1) "ability to maintain her social functioning," (2) "concentration, persistence and pace," (3) "ability to perform activities within a clear schedule," "maintain regular attendance," and "be punctual within customary tolerances," and (4) "ability to complete a normal work day and work week without interruptions from psychologically-based symptoms." (AR 688–89.) This opinion was contradicted by the opinions of two non-examining physicians, Dr. Funkenstein and Dr. Garcia, who opined that Plaintiff's abilities were only moderately limited by her mental limitations and that her attention and concentration were "intact for unskilled work." (AR 146–47, 194–95.)

As the opinion of Dr. Morgan is contradicted by the opinions of non-examining physicians, the ALJ can only reject Dr. Morgan's opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citation omitted). The ALJ accorded "little weight" to Dr. Morgan's opinion for the following reasons: (1) "Dr. Morgan only examined [Plaintiff] once and his opinion was not based on a long treatment history," (2) "Dr. Morgan overly relied on [Plaintiff's] subjective complaints and historical accounts," (3) "Dr. Morgan's opinion that [Plaintiff] was disabled since her alleged onset date touches upon subject matter reserved for the Commissioner" and "suggests speculation and possible extrapolation," (4) "the evidence suggests that [Plaintiff] underwent an examination by Dr. Morgan . . . through attorney referral and in connection with an effort to generate evidence for the current appeal," and (5) Dr. Morgan's opinion regarding Plaintiff's mental limitations is "inconsistent with the objective medical evidence, which shows that [Plaintiff] has responded well to medications and no doctor has ordered" pertinent testing. (AR 35–36.)

The ALJ's first rationale―Dr. Morgan only examined Plaintiff once―is clearly deficient. It is uncontested that Dr. Morgan was Plaintiff's examining physician, rather than a treating physician. (*See, e.g.*, AR 34.) Nonetheless, the ALJ must provide specific and legitimate reasons to accord less weight to the opinion of this examining physician, even if he was not a treating

physician. *See, e.g.*, *Lester*, 81 F.3d at 830–31. The ALJ's first rationale does not constitute such a reason. Instead, this rationale merely states that Dr. Morgan was an examining physician and does not otherwise provide any basis to discount this opinion. (*See* AR 34.) *See generally Lester*, 81 F.3d at 830 (describing "examining physicians" as "those who examine but do not treat the claimant"). The Court therefore finds that this rationale is not a valid specific and legitimate reason to reject Dr. Morgan's opinion.

Turning next to the ALJ's third stated basis for rejecting this opinion—Dr. Morgan opined that Plaintiff was disabled—this rationale is also deficient. Of course, the ALJ was correct that the ultimate disability determination lies with the Commissioner. *See, e.g.*, *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner." (citing 20 C.F.R. § 404.1527(e)(1))). However, as discussed above, Dr. Morgan's opinion extended well beyond the ultimate disability determination. (*See* AR 681–92.) This rationale bears no relationship to the remainder of Dr. Morgan's opinion regarding Plaintiff's mental limitations, or the impact of those limitations on Plaintiff's ability to handle work requirements. The Court therefore finds that this rationale is not a valid specific and legitimate reason to reject Dr. Morgan's opinion.

The ALJ's fourth stated rationale—Plaintiff underwent the examination with Dr. Morgan to generate evidence for the disability proceedings—is also deficient. While Plaintiff may have visited with Dr. Morgan in preparation for the disability proceedings, this fact has no bearing on Dr. Morgan's evaluation and findings. *See, e.g.*, *Lester*, 81 F.3d at 832 ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." (citation omitted)). Nonetheless, it appears that the ALJ imputed Plaintiff's potential motivations to Dr. Morgan. (*See* AR 35–36.) However, the ALJ cites to no evidence impugning Dr. Morgan's motivations in creating his opinion. (*See* AR 20–43); *cf. Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("[T]he source of a referral [is] relevant where there is no objective medical basis for the opinion, and where there is evidence of actual improprieties on the part of the doctor whose report the ALJ chooses to reject." (citations omitted)). The Court therefore finds that this is not a valid specific and legitimate reason to reject

Dr. Morgan's opinion. *See, e.g.*, *Barraza v. Colvin*, No. 2:13–cv–0430 JAM DAD, 2014 WL 651909, at *4 (E.D. Cal. Feb. 19, 2014) ("[I]t was recognized long ago that '[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.'" (second alteration in original) (quoting *Lester*, 81 F.3d at 832)).

The ALJ's fifth stated rationale—inconsistency with objective medical evidence—is not a valid basis to reject Dr. Morgan's opinion. In support of this rationale, the ALJ stated that (1) no other doctor ordered testing associated with the mental limitations opined by Dr. Morgan, and (2) Plaintiff positively responded to medication in the past. (AR 35.) On the issue of testing, the only pertinent testing regarding Plaintiff's mental health limitations was performed by Dr. Morgan. The ALJ fails to cite to—and the Court is not otherwise aware of—any affirmative evidence in the record that contradicts these test results. (*See* AR 20–43.) As such, contrary to the ALJ's statement, Dr. Morgan's opinion is not contradicted by the objective medical evidence because it is the *only* pertinent evidence in the record.

Regarding Plaintiff's response to the medications, Dr. Morgan provided his opinion roughly two years after Plaintiff responded positively to medication. (*See, e.g.*, AR 32, 34–35.) The ALJ fails to reference—and the Court is not otherwise aware of—any evidence that Plaintiff again responded positively to medication at the time or after Dr. Morgan rendered his opinion. (*See* AR 20–43.) Consequently, Plaintiff's previous response to medication has little probative value and does not constitute objective medical evidence that conflicts with the subsequent opinion provided by Dr. Morgan. *See, e.g.*, *Deloney v. Astrue*, No. 2:10–cv–2687 DAD, 2013 WL 618213, at *5 (E.D. Cal. Feb. 19, 2013) (finding that the ALJ failed to provide a specific and legitimate reason for rejecting the opinion of a physician where the ALJ discounted the opinion based on previous evidence in the record). *See generally Quinn v. Astrue*, No. 2:10–cv–2170 DAD, 2013 WL 552522, at *6 (E.D. Cal. Feb. 13, 2013) ("[T]he Ninth Circuit has found that medical reports that are most recent are more highly probative." (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001))).

Thus, the ALJ provided four deficient reasons for discounting the opinion of Dr. Morgan. Nonetheless, the ALJ did provide a valid specific and legitimate reason for discounting this

opinion. Specifically, the ALJ's second rationale—that Dr. Morgan based his opinion on Plaintiff's subjective statements—is a valid reason to accord this opinion little weight. In its decision, the ALJ determined that Plaintiff's statements regarding her impairments were not credible, (*see* AR 36), and that her "alleged limitations are so extreme as to suggest exaggeration," (AR 35). Plaintiff does not contest the ALJ's credibility determination regarding Plaintiff's statements as to her limitations. (*See* Doc. 20).

Additionally, as noted by the ALJ, Plaintiff's subjective complaints are pervasively discussed throughout Dr. Morgan's opinion. (*See* AR 682–89.) For example, Dr. Morgan consistently and extensively discusses Plaintiff's subjective complaints—including Plaintiff's self-assessment regarding her functioning capacity in numerous areas—when describing the basis for his "diagnostic impression" of Plaintiff. (*See* AR 687–89.) These pervasive references to Plaintiff's subjective statements demonstrate that Dr. Morgan "overly relied" on Plaintiff's non-credible subjective complaints.[4] This is a valid specific and legitimate reason to reject Dr. Morgan's opinion. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding that "the ALJ reasonably rejected" the opinion of a physician where the physician's "opinion was based almost entirely on the claimant's self-reporting"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a . . . physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (citation omitted)); *Roberts v. Colvin*, No. 1:13–cv–01614–GSA, 2015 WL 859623, at *8 (E.D. Cal. Feb. 27, 2015) ("Given the ALJ's unchallenged finding that [the plaintiff] lacked credibility, it was reasonable for the ALJ to reject a medical opinion based primarily on her statements." (citation omitted)).

---

[4] In her briefing, Plaintiff contests the ALJ's finding that Dr. Morgan overly relied on Plaintiff's subjective complaints when creating his report. (*See* Doc. 20 at 16–17.) In other words, Plaintiff contests the ALJ's interpretation of Dr. Morgan's report. (*See id.*)
  Contrary to Plaintiff's argument, Dr. Morgan's report is readily susceptible to the ALJ's interpretation. Specifically, Dr. Morgan's pervasive references to Plaintiff's subjective complaints clearly indicate that Dr. Morgan overly relied on Plaintiff's statements. (*See* AR 682–89). The Court therefore finds that the ALJ's interpretation on this issue was reasonable and, consequently, the Court shall defer to the ALJ's interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [courts] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." (citation omitted)).

In summary, the ALJ's second stated rationale constitutes a valid specific and legitimate reason for rejecting the opinion of Dr. Morgan. While the ALJ erred in providing additional invalid reasons for rejecting Dr. Morgan's opinion, that error was inconsequential to the ultimate disability determination. In other words, as the ALJ provided a valid specific and legitimate reason for discounting Dr. Morgan's opinion, the ALJ's error relating to the other invalid stated reasons was harmless. *See, e.g.*, *Tommasetti*, 533 F.3d at 1038 (noting that harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination'" (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006))). Consequently, remand is not warranted on this issue. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (stating that courts "may not reverse an ALJ's decision on account of an error that is harmless" (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006))).

### IV. CONCLUSION

For the reasons provided above, the Court DENIES Plaintiff's Motion, (Doc. 20), GRANTS Defendant's Motion, (Doc. 24), and AFFIRMS the final decision of the Commissioner. The Court DIRECTS the Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

Dated: **September 27, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE